Robert FITCH *v.* STATE of Arkansas

CR 93-21                                      853 S.W.2d 874

Supreme Court of Arkansas
Opinion delivered May 10, 1993

*Christopher O'Hara Carter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Cathy Derden*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. This case involves interpretation of the Omnibus DWI Act. The facts as stipulated are that at 11:45 p.m. on August 11, 1992, Robert Fitch, the appellant, was arrested and charged with his third offense of driving while intoxicated after a deputy sheriff was called to the scene by a neighbor; the breathalyzer test revealed a blood-alcohol level of 0.256.

Fitch was seen by neighbors and the arresting officer driving a 250 cc Suzuki three wheeler in his own yard and in the adjoining neighbor's yard; there was no evidence that Fitch had driven the three wheeler onto a road or highway. Such a vehicle is commonly known as an all-terrain vehicle (ATV). No driver's license, registration, or liability insurance is required to operate an ATV under Arkansas law.

Fitch was found guilty of DWI in Baxter County Municipal Court, and then appealed to the circuit court which found operation of the ATV "constitutes a vehicle under Arkansas DWI law" and that Fitch's "operation of the vehicle, even though not on a public roadway, still constituted a violation of the law. . .when he did so in an intoxicated condition." The court sentenced Fitch to 365 days in jail with all but sixty days suspended, revoked his driver's license for two years, and required him to pay a fine of $900.00 plus costs of $332.25. He was further ordered to attend an inpatient program of at least twenty-eight days in an approved alcohol rehabilitation program and was placed on one year of probation. Fitch appeals from the circuit court's decision.

This is a case of first impression in which this court is required to define the term "motor vehicle" under the Omnibus DWI Act which is codified as Ark. Code Ann. §§ 5-65-101

124

through 117 (1987 and Supp. 1991); the General Assembly failed to define this term as it relates to this Act. Relevant to the present case, § 5-65-103(a) provides, "It is unlawful and punishable as provided in this act for any person who is intoxicated to operate or be in actual physical control of a motor vehicle."

Fitch urges this court to adopt a policy that if a vehicle is not required to be registered, insured, or require a driver's license to operate, it does not qualify as a motor vehicle under § 5-65-103(a) of the Omnibus DWI Act. The State asks this court to apply the general rule and give effect to the intention of the legislature in giving the term motor vehicle its fixed and commonly accepted meaning. *State* v. *Joshua*, 307 Ark. 79, 818 S.W.2d 249 (1991). When construing a statute, it is necessary to interpret that statute in concert with others that are "relevant to the subject and give it a meaning and effect derived from the combined whole." *Cousins* v. *Dennis*, 298 Ark. 310, 315, 767 S.W.2d 296 (1989).

A motor vehicle is generally defined as "a self-propelled wheeled conveyance that does not run on rails." American Heritage Dictionary, 817 (2d Ed. 1982). Under the Transportation Title chapter on Registration and Licensing, Ark. Code Ann. § 27-14-207(b) (Supp. 1991) defines the term motor vehicle as follows:

> "Motor Vehicle" means every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails.

The term motor vehicle is defined the same throughout the various chapters of the Transportation Title, e.g. see §§ 27-16-207(b), 27-19-206, and 27-49-219(b) (1987).[1]

Ark. Code Ann. §§ 27-21-101 through 109 (Supp. 1991) of the Transportation Title refers to "all-terrain vehicles" (ATVs) and § 27-21-102(1) defines them as follows:

---

[1] For other statutes in other titles that define vehicle or motor vehicle, see Ark. Code Ann. §§ 22-8-203, 23-112-102, 26-55-202 (1987). *See also* Ark. Code Ann. § 27-37-701(a) (Supp. 1991).

> [E]very three-, four-, or six- wheeled vehicle seventy-five inches (75") or less in width, having a dry weight of eight-hundred pounds (800 lbs.) or less, equipped with low pressure tires designed primarily for off-road recreational use and having an engine displacement of no more than six hundred fifty cubic centimeters (650 cc). The term "all-terrain vehicle" shall not include any golf cart, riding lawnmower, or lawn or garden tractor[.]

Section 27-21-101 describes the purpose of the legislation covering ATVs, which is to regulate and restrict their use so as to insure the safety and general welfare of the citizenry "by limiting the situations where all-terrain vehicles are permitted to be used in a dangerous and unsafe fashion." While ATVs are generally restricted from use on the "public streets and highways of this state" and thus are exempt from registration requirements, § 27-21-106(a) lists specific conditions under which ATVs may be lawfully operated upon the public streets and highways. In § 27-21-109(b), four requirements are listed which operate as a complete defense to the operation of an ATV on a public street or highway; the statute does not identify a defense to driving an ATV while intoxicated.

In reviewing the statutory provisions that regulate ATVs, it is clear that an ATV meets the definition of a motor vehicle as set out in the Transportation Title set out hereinabove since ATVs are self-propelled and do not require rails. For definitional purposes, we keep in mind that the statutory scheme regarding ATVs indicates the General Assembly's concern for the public's safety by its having regulated the manner in which the ATVs are to be operated. In fact, the statutes regulate usage of ATVs on both private and public property. For these reasons, we conclude the Omnibus DWI Act's employment of the term motor vehicle includes all-terrain vehicles.

In his second point for reversal, Fitch argues that DWI is a traffic offense, and since he was not on a public street or highway when he was arrested, his conviction under that act must be reversed. We disagree.

Nowhere within the Omnibus DWI Act is prosecution for DWI limited only to those driving on the public streets or highways. In *Robinson* v. *Sutterfield*, 302 Ark. 7, 786 S.W.2d

572 (1990), we held that DWI is a traffic offense and "a violation of a law regulating the operation of a vehicle upon a roadway". In *Sanders* v. *State*, 312 Ark. 11, 846 S.W.2d 651 (1993), we affirmed a conviction for DWI, holding that a traffic offense can occur on a private roadway. In *Sanders* we pointed out that the Omnibus DWI Act "contains no location or geographic element, and we cannot read it to add as an element of DWI that the accused have operated or had control of a vehicle on a public highway." *Id.* at 13.

Fitch cites *State of Washington* v. *Day*, 96 Wash. 646, 638 P.2d 546 (1981), to support his argument that prosecution for DWI should not occur where the facts arise on non-roadway or private property. In *Day* a conviction for DWI was reversed where the defendant, who was under the influence of alcohol or drugs, was observed by the arresting officer from the roadway driving a pickup truck in circles within a field owned by his parents. In reversing the conviction the court found:

> [I]t would be an unreasonable exercise of police power to extend the prohibition to petitioner's conduct. He was posing no threat to the public. This is not a case where it is logical to assume he would leave the private property and pursue a course along a public roadway. The vehicle was unlicensed and he was not on or even near a public road. In addition, the land on which he was driving was privately owned and the public had no right to be there nor was the public expected to be on the property. His arrest did not further the purpose of the statute in any way.

*Id.* 638 P.2d at 548. The Washington Supreme Court appended a footnote which opined that an officer, with probable cause to believe such a person was under the influence, should go ahead and investigate. The court alluded to the fact that it might have affirmed the conviction if the land or the vehicle had been owned by anyone other than the defendant or his parents, or if any of the facts had been different. *Id.*

In our own case of *Sanders*, we cited a Minnesota case. There, it was found that the Minnesota statutory scheme led to the conclusion that it was the legislative intent that prosecution for DWI could occur "anywhere within the state". *Minnesota* v. *Carroll*, 31 N.W.2d 44, 45 (Minn. 1948). While not endorsing

the Minnesota court's breadth of inclusion, that state's statute was similar to Arkansas' in that it had no limitation on geographic location for prosecution purposes.

Here, Fitch was driving the ATV on his and on his neighbor's properties when the neighbor summoned the arresting officer. The General Assembly's intent when enacting the Omnibus DWI Act was to protect the public from the damage and tragedies that DWI can cause; the fact that an offender is not on a roadway is irrelevant. Certainly, ATVs, as discussed above, may be utilized on both public and private property or thoroughfares. In any event, the potential for harm to Fitch's neighbor's property or to others on the property was present.

For the reasons cited above, we affirm the lower court, and in doing so, hold that an ATV is a motor vehicle for purposes of the Omnibus DWI Act. Because the General Assembly has not limited the Act as to geographic location, prosecution for DWI can occur where it is necessary to protect the public interest.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. We backed ourselves into a corner with our ruling in *Sanders* v. *State*, 312 Ark. 11, 846 S.W.2d 651 (1993) where we held that one may be guilty of DWI even if the offense occurs on private property.

This was a good decision for the public welfare under a good set of facts that were comfortable to use to make a decision. The same holds true to the facts in the instant case. However, I am afraid that we engaged in a "little legislating" to reach the conclusion in *Sanders*. If we are going to be guilty of a "little legislating" let us amend our "judicial act." We should limit this case today to the *pertinent fact* that this defendant on riding his three wheeler (four wheeler — no one seemed to agree as to how many wheels this vehicle had) onto another's private property, endangered third parties. For the unwary public, I would advise you not to partake of an alcoholic beverage while operating your riding lawn mower in your backyard nor should you have an alcoholic beverage while doing donuts in your pickup on your back-forty because the rule in *Sanders*, and now this decision, may subject you to a DWI charge. So what happened to the Fourth Amendment? It may be suspect in Arkansas.

128

I would reverse and urge our legislature to reclaim the domain that is rightfully theirs. In the future, I hope I remember this lesson in the separation of powers.